# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.  Case No. 3:11-cr-79-MMH-MCR

ELMARIO DESHAWN CLAY

---

Defendant, Elmario DeShawn Clay, proceeding pro se, filed this Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) (Doc. 77; Motion) on September 12, 2022. The United States opposes the Motion. See United States' Response in Opposition to Defendant's Motion for Compassionate Release (Doc. 80; Response). On October 31, 2022, Clay filed Defendant's Reply in Support of His Motion for Modification of Sentence, in Essence for Compassionate Release, Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. 82; Reply). Clay also filed Defendant's Addendum to Compassionate Release Motion and Incorporated Response to Plaintiff's Opposition (Doc. 83; Addendum) on February 27, 2023. Additionally, on June 12, 2023, Clay filed Defendant's Combined Motion for Leave to Supplement His Pending Motion for Compassionate Release; Supplement to the Pending Motion for Compassionate Release; and Motion for Order to the Government to Show Cause as to the Supllemental [sic] Argument (Doc. 85; Motion to Supplement). The United

States filed a Response in Opposition to the Motion to Supplement (Doc. 87; Response to Supplement).  And Clay filed Defendant's Reply to Government's Response in Opposition to Defendant's Supplement to his Pending Motion for Compassionate Release (Doc. 89; Supplemental Reply).  The matter is ripe for the Court's resolution.  Upon consideration of the record, the applicable legal authority, the factors set forth in 18 U.S.C. § 3553(a), and the relevant policy statements issued by the Sentencing Commission,

IT IS ORDERED that the Motion is:

☒ DENIED after complete review of the Motion on the merits.

☒ FACTORS CONSIDERED

Clay is a 51-year-old inmate incarcerated at Edgefield FCI who is projected to be released on September 12, 2036.  See Bureau of Prisons Inmate Locator at https://www.bop/gov/inmateloc/ (last accessed on March 5, 2025).  On January 20, 2012, the Court sentenced Clay to 30 years' imprisonment after he pled guilty to conspiracy to distribute over 280 grams of cocaine base, possession of a firearm in furtherance of a drug trafficking crime, and possession of a firearm by a convicted felon.  See Plea Agreement (Doc. 31); Judgment in a Criminal Case (Doc. 40; Judgment).  In the Motion, Clay seeks compassionate release based on his medical circumstances, specifically his

history of hypertension and his alleged high-risk for contracting Covid-19. See generally Motion. Clay also argues that he received an "unusually long sentence" which would warrant compassionate release under § 1B1.13(b)(6) of the United States Sentencing Guidelines (U.S.S.G.). See Addendum at 3-5; Motion to Supplement at 3-11.

A district court "may not modify a term of imprisonment once it has been imposed," except under certain circumstances defined by statute. 18 U.S.C. § 3582(c). As amended by the First Step Act, § 3582(c)(1)(A) provides:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that … extraordinary and compelling reasons warrant such a reduction … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i). The Eleventh Circuit Court of Appeals instructs that U.S.S.G. § 1B1.13 is the applicable policy statement for all § 3582(c)(1)(A) motions, and that "a district court cannot grant a motion for reduction if it

would be inconsistent with the [Sentencing] Commission's policy statement defining 'extraordinary and compelling reasons.'" United States v. Bryant, 996 F.3d 1243, 1249 (11th Cir. 2021), superseded in part on other grounds by U.S.S.G. § 1B1.13 (2023). A movant for compassionate release must establish that a reduction in sentence is warranted. United States v. Kannell, 834 F. App'x 566, 567 (11th Cir. 2021) (citing United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014)).[1] And, "[b]ecause the statute speaks permissively and says that the district court 'may' reduce a defendant's sentence after certain findings and considerations, the court's decision is a discretionary one." United States v. Harris, 989 F.3d 908, 911 (11th Cir. 2021).

"[B]y dint of § 3582(c)(1)(A)'s plain text, a district court may reduce a term of imprisonment if (1) the § 3553(a) sentencing factors favor doing so, (2) there are 'extraordinary and compelling reasons' for doing so, and … (3) doing so wouldn't endanger any person or the community within the meaning of § 1B1.13's policy statement." United States v. Tinker, 14 F.4th 1234, 1237 (11th Cir. 2021). However, "nothing on the face of 18 U.S.C. § 3582(c)(1)(A) requires

---

[1] The Court does not rely on unpublished opinions as binding precedent, but they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

a court to conduct the compassionate release analysis in any particular order." Id. "Because all three conditions – i.e., support in the § 3553(a) factors, extraordinary and compelling reasons, and adherence to § 1B1.13's policy statement – are necessary, the absence of even one would foreclose a sentence reduction." Id. at 1238.

Under U.S.S.G § 1B1.13, extraordinary and compelling reasons that may render a defendant eligible for a sentence reduction include: (1) medical circumstances of the defendant; (2) advanced age plus length of the term already served; (3) family circumstances that result in the defendant being the only available caregiver for a minor or incapacitated immediate family member; (4) sexual or physical abuse of the defendant by an individual with custody or control of the defendant during the term of imprisonment sought to be reduced; (5) other circumstances similar in gravity to those in (1) through (4); and (6) an "unusually long sentence," if the defendant has served at least 10 years of imprisonment and a change in the law would produce a gross disparity between the defendant's sentence likely to be imposed at the time the motion is filed. See U.S.S.G § 1B1.13(b)(1)-(6). However, even if the court finds that an extraordinary and compelling reason exists, it still may not reduce the defendant's term of imprisonment under § 3582(c)(1)(A) unless it also finds that

- 5 -

the defendant's release would not endanger the community and that the factors listed in 18 U.S.C. § 3553(a) favor compassionate release. Tinker, 14 F.4th at 1237.

Clay contends that his medical circumstances, coupled with the threat of contracting Covid-19 within Edgefield FCI, demonstrate "extraordinary and compelling reasons" that warrant compassionate release. See generally Motion. To state a cognizable basis for a sentence reduction based on medical circumstances, a defendant must first establish that he suffers from a condition that falls within one of the categories listed in U.S.S.G. § 1B1.13. See United States v. Giron, 15 F.4th 1343, 1346 (11th Cir. 2021) (noting that "extraordinary and compelling reasons" are limited to those set forth in § 1B1.13).[2] Section 1B1.13(b)(1) provides extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:

> **(A)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> **(B)** The defendant is--

---

[2] In his Reply, Clay contends that district courts may determine "extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13." See Reply at 7-8. This contention, however, is foreclosed by the Eleventh Circuit's opinion in Giron. See 15 F.4th at 1346; see also Bryant, 996 F.3d at 1262 ("[D]istrict courts may not reduce a sentence under Section 3582(c)(1)(A) unless a reduction would be consistent with 1B1.13.").

> **(i)** suffering from a serious physical or medical condition,
> **(ii)** suffering from a serious functional or cognitive impairment, or
> **(iii)** experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> **(C)** The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

U.S.S.G. § 1B1.13(b)(1)(A)-(C). Clay's health conditions, specifically hypertension and the alleged increased risk of contracting Covid-19, do not meet the requirements of § 1B1.13. According to the Centers for Disease Control (CDC), hypertension <u>might</u> increase the risk of severe illness from Covid-19, but the mere possibility of an increased health risk is not extraordinary.[3] Likewise, hypertension is hardly an extraordinary condition. The CDC reports that nearly half of adults have high blood pressure (119.9 million people) and about 27 million of those individuals, like Clay, have their blood pressure under control through medication.[4] Here, Clay's hypertension does not rise to the level of a "serious" medical condition as contemplated by § 1B1.13(b)(1)(B)(i), nor does Clay sufficiently allege that his hypertension

---

[3] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html, last accessed on March 3, 2025

[4] https://www.cdc.gov/bloodpressure/facts.htm, last accessed on March 3, 2025

"diminishes [his ability] to provide self-care within the environment of a correctional facility."  See 1B1.13(b)(1)(B)(iii).  And, Clay has not demonstrated that he requires long-term or specialized medical care that is not being provided by the institution.  Indeed, Clay seemingly acknowledges that the Bureau of Prisons is providing him with the care he needs.  See Motion at 4-5.  In his Addendum, Clay argues that he also suffers from obesity, which is "linked to impaired immunity, decreased lung capacity, and can make ventilation more difficult."  Addendum at 1-2.  However, Clay's purported obesity is far from extraordinary.  The CDC reports that nearly 40% of adults in the United States suffer from obesity.[5]  Thus, neither Clay's hypertension nor his obesity constitute serious medical conditions much less extraordinary conditions.  See Giron, 15 F.4th at 1346; United States v. Harris, 989 F.3d 908, 912 (11th Cir. 2021) (affirming the district court's denial of an inmate's motion for compassionate release when the inmate argued that his hypertension, which he argued increased his risk of death from Covid-19, justified his release); United States v. Albury, No. 21-12094, 2022 WL 211625, at *3 (11th Cir. Jan. 25, 2022).

---

[5] https://www.cdc.gov/obesity/php/about/index.html, last accessed on March 3, 2025

Clay's reliance on the Covid-19 pandemic is similarly unavailing. The President declared the end of the Covid-19 Public Health Emergency (PHE) on May 11, 2023, and the risk of Covid-19 within prisons has been drastically mitigated. Accordingly, Clay's arguments do not satisfy the burden to grant compassionate release for medical circumstances.[6]

In the Motion to Supplement, Clay seeks to add an additional basis to his request for compassionate release. See generally Motion to Supplement. Specifically, he asks the Court to consider releasing him because, in light of intervening changes in the law, the sentence imposed on him is unusually long when compared to the sentence he would receive if sentenced today. See id. at 2-4. In doing so, however, he fails to identify an intervening change in law that would actually have impacted his sentence. See id. at 3-4. (mistakenly

---

[6] Although not raised by either party in the filings, the Court notes that in November 2023, the United States Sentencing Commission amended the Sentencing Guidelines to include U.S.S.G. § 1.B13(b)(1)(D)(i)-(iii) which delineates the circumstances in which a defendant housed in a correctional facility may be granted compassionate release in light of "(I) an ongoing outbreak of an infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority[.]" See United States v. Johns, No. 23-10156, 2023 WL 8469703, at *4 n.1 (11th Cir. Dec. 7, 2023) (noting the amendments to the Sentencing Guidelines relating to infectious disease outbreaks and public health emergencies). However, Clay has not demonstrated that he "is at increased risk of suffering severe medical complications or death as a result of exposure to [an] ongoing outbreak of infectious disease or the ongoing public health emergency[.]" U.S.S.G. § 1B1.13(b)(1)(D)(ii). And, as noted above, the President declared an end to the Covid-19 Public Health Emergency, and Clay points to no evidence that there is an ongoing infectious disease outbreak at Edgefield FCI.

arguing that he was sentenced as a career offender). Despite this, in his Supplemental Reply, Clay contends that compassionate release is warranted based on what he perceives to be errors that occurred during his sentencing. But, a motion for compassionate release is not the proper vehicle to challenge a sentencing error. As such, Clay fails to establish that he is eligible for compassionate release.

In any event, the sentencing factors under 18 U.S.C. § 3553(a) do not support a reduction in sentence at this time. Clay committed and was sentenced for serious drug and firearm offenses. See Judgment at 1; Transcript of Sentencing Hearing at 16 (Doc. 52; Sentencing Transcript). At his sentencing, the Court noted Clay's long history of criminal activity, including several violent offenses. See Sentencing Transcript at 45-46. The Court even observed that Clay possessed "one of the longest criminal histories" the Court had ever seen. Id. Additionally, Clay's conduct while incarcerated does not favor shortening his sentence. Clay has been disciplined for possessing a non-hazardous tool (August 2022), for fighting with another inmate (May 2020), assaulting another inmate (September 2018), and for giving or accepting money without authorization (March 2020). See Exhibit 2 to Response (Doc. 80-2). Clay's sentence reflects the serious nature of his offenses

and functions to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, and to protect the public from further crimes. See 18 U.S.C. § 3553(a)(2)(A)-(C). Moreover, Clay continues to represent a danger to the community such that granting him release at this time would not serve the interests of justice. Accordingly, granting Clay compassionate release at this time would not be consistent with the statutory purposes of sentencing or the Sentencing Commission's policy statements.

**DONE AND ORDERED** in Jacksonville, Florida, on this 5th day of March, 2025.

MARCIA MORALES HOWARD
United States District Judge

Lc34

Copies to:
Counsel of Record
Defendant